NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| KEVIN ROBINSON, | : | Civ. No. 15-8097 (FLW) |
|  | : |  |
| Petitioner, | : |  |
|  | : | **OPINION** |
| v. | : |  |
|  | : |  |
| STEPHEN JOHNSON *et al.*, | : |  |
|  | : |  |
| Respondents. | : |  |

**FREDA L. WOLFSON, U.S.D.J.**

## I. INTRODCUTION

Before the Court is the Petition for a writ of habeas corpus of Petitioner Kevin Robinson,

("Petitioner") brought pursuant to 28 U.S.C. § 2254. (ECF No.1.) For the reasons set forth below,

Petitioner's habeas petition is DENIED, and Petitioner is DENIED a certificate of appealability.

## II. BACKGROUND

The following factual summary is taken from the opinion of the Superior Court of New

Jersey, Appellate Division, denying Petitioner's direct appeal:

> [F]ollowing a jury trial . . . [defendant] was found guilty of the first-
> degree murder of Keenan Sanders, N.J.S.A. 2C:11–3(a)(1), and
> third-degree possession of a knife for an unlawful purpose, N.J.S.A.
> 2C:39–4(d). At sentencing, the judge merged the weapons offense
> into the murder conviction. He sentenced defendant to a fifty-year
> term of imprisonment, 85% of which was to be served without
> parole pursuant to the No Early Release Act, N.J.S.A. 2C:43–7.2.
>
> . . .
>
> On July 12, 2007, Sanders was driving his mother's van
> accompanied by his friend and neighbor, Jonathan Cancel. They

picked up Sanders' girlfriend, Pamela Robinson, and her cousin Shakyia Sumner. The group traveled to a local "Stop and Shop." The women entered the store while the men waited in the van. After some time, Sanders and Cancel drove away, leaving the women at the supermarket. Robinson phoned Sanders and asked him to return, but he refused. She also told him that the women had left some belongings in the van, and Sanders agreed to drop them off at Sumner's cousin's house. The women began walking there, and, on the way, Robinson called her friend, Oscar Quintana, and asked him to meet them there.

When Robinson and Sumner arrived, Sanders and Cancel were parked in front of the house in the van. Quintana had also arrived and was parked nearby. Robinson went to the van to retrieve her belongings, and an argument ensued between her and Sanders. Sanders pushed her to the ground. Cancel exited the van and pulled Sanders away from the women, who in turn ran to Quintana's car.

Robinson called defendant, her brother, and told him about the fight with Sanders. Quintana received a call from his mother, who told him to pick up his younger brother, Joseph Menjivar. After Quintana picked up Menjivar, Robinson gave him directions, and Quintana picked up defendant. Quintana drove the group to Sanders' home.

Sanders and Cancel were in the front yard talking when Quintana drove by, made a u-turn and parked. Robinson and Sumner exited the car and went across the street to see some people they knew. Quintana and his brother went into a nearby wooded area to urinate. Defendant walked towards Sanders.

The testimony from the various witnesses somewhat diverged as to the events that followed. Cancel testified that defendant said, "Who hit my sister?" and immediately squared off to fight Sanders. As the men struggled physically, Cancel "saw [Sanders] grab for his [own] neck."

Menjivar walked to the front yard and saw the men verbally arguing before both ended up fighting on the ground. Menjivar then "saw [defendant] take out a knife [and] ... strike [Sanders] right [in the

throat area].″  He heard defendant say, "This is what you get."  Quintana only saw defendant and Sanders fighting.  Eventually, defendant ran back towards Quintana's car.

Cancel gave chase while swinging a golf club that struck defendant "a couple of times."  This was confirmed by Quintana and Menjivar, who claimed that Cancel hit defendant with the club above the eye.  Cancel threw the golf club at Quintana's car as it drove away with defendant, Robinson, Sumner, Menjivar and Quintana inside.

As they left, defendant told Quintana to "drive smooth" so as to avoid attention, and directed Quintana to defendant's aunt's house so that he could clean up.  Menjivar testified the following exchange took place in the car:

> Q. What did [defendant] say?
>
> A. He made me look at the knife and said, "Was it big enough?"
>
> Q. Did he show you the knife?
>
> A. Yes.  He still had it in his hand.
>
> ....
>
> Q. What did that knife look like?
>
> A. Kind of like an Army knife.  Kind of like it had like zigzags, like the blade was zigzags.

Quintana dropped off Robinson and Sumner.   At defendant's direction, Quintana picked up defendant's two friends.  Quintana heard defendant tell them that he had just stabbed someone.

Meanwhile, Cancel tried to assist Sanders who was bleeding heavily as he lay near the front steps of his home.  Cancel yelled for help, and Sanders' parents came out of the house.  Although officers from the Franklin Township Police Department arrived within minutes, their attempts to render first aid were unsuccessful.  Sanders died at

the scene. A subsequent autopsy revealed that the cause of death was a stab wound which severed both the internal jugular vein and the left common carotid artery.

Defendant testified in his own behalf. He claimed that he approached Sanders and Cancel and asked, "Who is Keenan?" Defendant was not armed. As the parties exchanged words, both Sanders and Cancel assaulted him. Defendant was cut above his eye, and, although he never saw a weapon, believed one of the two men had a knife. The three men wrestled with each other before defendant managed to "get loose" and run to Quintana's car. Cancel ran after him and tried to hit him with a golf club, which defendant was able to grab and throw into some nearby bushes. Sumner confirmed that defendant disarmed Cancel and threw the golf club away.

Defendant never saw Sanders get stabbed, and he denied ever having a knife or showing one to Menjivar. He testified that he told Quintana to "[c]alm down and drive regular" because he "didn't want to get in no accident," and because defendant had an outstanding "warrant for car tickets." At his aunt's house, defendant cleaned up because he was bleeding badly; his aunt took photos of the cut above his eye which were introduced in evidence. Defendant denied that Quintana picked up any of his friends, instead claiming that Quintana dropped him off at the house of a woman that defendant knew.

*State v. Robinson*, Indictment No. 07-10-0731, 2011 WL 1543355, at *1–3 (N.J. Super. Ct. App. Div. Apr. 26, 2011).

Petitioner appealed his conviction and sentence. The Appellate Division affirmed on April 26, 2011, but remanded the case for the limited purpose of conducting a restitution hearing. *Id.* The New Jersey Supreme Court denied certification on October 20, 2011. *State v. Robinson*, 29 A.3d 742 (N.J. 2011). Petitioner filed a petition for post-conviction relief ("PCR"), which was denied by the Superior Court in a written opinion on February 26, 2013. (ECF No. 13-23.) Petitioner appealed and the Appellate Division affirmed the denial of PCR on April 20, 2015. *State*

*v. Robinson*, Indictment No. 07-10-0731, 2014 WL 8628578, at *1 (N.J. Super. Ct. App. Div. Apr. 20, 2015). The New Jersey Supreme Court denied certification on July 10, 2015. *State v. Robinson*, 116 A.3d 1073 (N.J. 2015). In October, 2015, Petitioner filed a habeas petition with this court raising fifteen grounds for habeas relief:

1. Because the state's evidence was insufficient to prove beyond [a] reasonable doubt that defendant was guilty of 1st degree murder, the trial court should have granted a judgment of acquittal on these charges.

2. The court's failure to instruct the jury that before considering defendant's allege[d] out of court statements, it must first find such statements to be credible and its failure to instruct the jury that non-memorialized oral statements must be regarded with caution deprived defendant of his federal constitutional rights to a fair trial and to due process of law. U.S. Const. Amend. VI and XIV.

3. Trial counsel's failure to request [the court] to instruct the jury that before considering defendant's allege[d] out of court statements, it must first find such statements to be credible and failure to instruct the jury that non-memorialized oral statements must be regarded with caution deprived defendant of his federal constitutional rights to a fair trial and to due process of law. U.S. Const. Amend. VI and XIV.

4. Trial counsel erred by failing to file a preliminary motion to challenge the incriminating out of court confessions Robinson den[ies] making which violated Robinson's 5th and 6th Amend[ment] rights.

5. Trial counsel erred by failing to challenge the indictment before going to trial. The sole witness who testified before the grand jury was neither an eye witness nor in possession of relevant information concerning the alleged crime.

6. The prosecutor allowed the state witness testimony to go uncorrected and during summation, the prosecutor capitalized on the false testimony, which reinforced the deception of the testimony depriving the defendant of due process.

7. During closing summation trial counsel's failure to object to the prosecutor's improper remarks constituted ineffective assistance of counsel.

8. The readback that the court provided in answer to the jury's inquiry omitted pertinent sections of the record and thus was potentially misleading to the jury and prejudicial to the defendant.

9. The readback trial counsel provided in agreement with state counsel omitted significant sections the jury requested which was misleading and prejudicial[,] thus constituted ineffective counseling.

10. Trial judge abused his discretion in failing to strike juror for cause which deprived Mr. Robinson of his right to trial by an impartial jury.

11. Trial counsel failed to utilize the remaining 16 peremptory challenges available to excuse several jurors that should have been removed violated Robinson's 6th Amend. Right.

12. Counsel was ineffective when he failed to allow defendant to participate in jury selection process as proscribed by R. 3:16 Presence of the Defendant.

13. Trial counsel's failure to correct the flaws in the jury charges amounted to ineffective counseling violating Robinson's 6th Amend. right.

14. Trial counsel's cumulative errors affected the jury deliberation. Thus, Robinson's conviction should be reversed because his 6th Amend. right was violated.

15. The exceptions authorized in R. 3:22-4 and R. 3:22-5 permit Robinson's claims not to be procedurally barred. All of Robinson's claims are ineffective counseling claims [] which trial counsel violated Robinson's U.S. Const. 6th Amend. and N.J. Const. Art. 1, Para 10 rights resulting in fundamental injustice. This matter must be remanded for an evidentiary hearing reversing the lower court's order because counsel need[s] to explain the reasons for his misconduct, and inactions.

(ECF No. 1-1.)

Respondents submitted an initial answer that was stricken by the Court. Subsequently, Respondents submitted an Amended Response in which they argue that Petitioner's claims are meritless and that Ground Five is unexhausted. (ECF No. 13-1.) Petitioner then submitted a traverse. (ECF No. 18.)

## III. LEGAL STANDARD

Under 28 U.S.C. § 2254(a), the district court "shall entertain an application for a writ of habeas corpus [o]n behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A habeas petitioner has the burden of establishing his entitlement to relief for each claim presented in his petition based upon the record that was before the state court. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013); *see also Parker v. Matthews*, 567 U.S. 37, 40–41 (2012). District

courts are required to give great deference to the determinations of the state trial and appellate courts.  *See Renico v. Lett*, 559 U.S. 766, 773 (2010).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for a writ of habeas corpus unless the state court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2).  Federal law is clearly established for these purposes where it is clearly expressed in "only the holdings, as opposed to the dicta" of the opinions of the United States Supreme Court.  *See Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015).  "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong."  *Id.*  Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and the] applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

In addition to the above requirements, a federal court may not grant a writ of habeas corpus under § 2254 unless the petitioner has "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A).  To do so, a petitioner must "'fairly present' all federal claims to the highest state court before bringing them in federal court."  *Leyva v. Williams*, 504 F.3d 357, 365 (3d Cir. 2007) (citing *Stevens v. Delaware Corr. Ctr.*, 295 F.3d 361, 369 (3d Cir. 2002)).  This requirement ensures that state courts "have 'an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights.'"  *Id.* (citing *United States v. Bendolph*, 409 F.3d 155, 173

(3d Cir. 2005) (quoting *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981)). However, to the extent that a petitioner's constitutional claims are unexhausted, a court can nevertheless deny them on the merits under 28 U.S.C. § 2254(b)(2). *See Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007); *Bronshtein v. Horn*, 404 F.3d 700, 728 (3d Cir. 2005).

## IV. DISCUSSION

### A. Ground One: Sufficiency of the Evidence

In Ground One, Petitioner argues that the trial court erred in denying his motion for a judgment of acquittal. (ECF No. 1-1 at 14.) In doing so, Petitioner appears to be challenging the sufficiency of the evidence against him. He explains that the testimony of the State's key witness, Joseph Menjivar — who testified to seeing Petitioner with a knife — was inconsistent with other witnesses who testified to never seeing Petitioner with a knife. (*Id.* at 14–17.)

The Appellate Division on direct appeal rejected this claim as follows:

> When deciding a motion for acquittal based upon the insufficiency of the State's evidence, the trial court must apply the time-honored standard set forth in *State v. Reyes*, 50 N.J. 454, 459 (1967):
>
>> [W]hether[ ] viewing the . . . evidence in its entirety, be that evidence direct or circumstantial, and giving the State the benefit of all its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom, a reasonable jury could find guilt of the charge beyond a reasonable doubt. [(citation omitted).]
>
> We review the decision of the trial judge *de novo* applying the same standard. *State v. Bunch*, 180 N.J. 534, 549 (2004).
>
> Menjivar testified that he saw defendant stab Sanders as he said, "This is what you get." After the stabbing, defendant showed Menjivar the knife and asked, "Was it big enough?" In the car, defendant told his sister, "Stop crying. It's going to be all right. I handled it." While in Quintana's car, defendant told his friends that he had stabbed someone. Applying the *Reyes* standard, there was sufficient evidence for the jury to have found defendant guilty of both charges beyond a reasonable doubt.

*Robinson*, 2011 WL 1543355 at *3–4.

When a petitioner presents a claim challenging the sufficiency of the evidence against him, "a reviewing court must ask 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Eley*, 712 F.3d at 847 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). A court sitting in habeas review may therefore overturn a conviction for insufficiency of the evidence only "if it is found that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id*. (quoting *Jackson*, 443 U.S. at 324). "Under *Jackson*, federal courts must look to state law for the substantive elements of the criminal offense, but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Coleman v. Johnson*, 566 U.S. 650, 655 (2012). Under this "deferential federal standard," juries have "broad discretion in deciding what inferences to draw from the evidence presented at trial" and federal courts must not "unduly impinge[ ] on the jury's role as factfinder" by engaging in "fine-grained factual parsing." *Id*.

Here, given the testimony from Joseph Menjivar that Petitioner stabbed the victim with a knife (ECF No. 13-6 at 116), coupled with testimony from witnesses Quintana and Sumner that Petitioner himself stated he stabbed the victim (*see* ECF No. 13-6 at 85; ECF No. 13-5 at 56), it is clear that a rational fact-finder could have found beyond a reasonable doubt that Petitioner engaged in the purposeful or knowing killing of the victim, and that Petitioner possessed a knife for an unlawful purpose. Because the evidence in this matter was clearly sufficient, the Appellate Division's rejection of Petitioner's claim was neither contrary to nor an unreasonable application of Supreme Court precedent. Therefore, Petitioner is denied habeas relief on this claim.

## B. Ground Two: Jury Instructions

In Petitioner's next ground, he argues that the trial judge should have given a jury instruction regarding Petitioner's out-of-court statements referred to by witnesses at trial.[1] (ECF No. 1-1 at 17.) In support of his claim, he states that Menjivar's testimony describing the knife, the stabbing, and Petitioner's statements, were inconsistent and false, and that other witness testimony describing Petitioner's statements admitting to the stabbing were similarly false. (*Id.* at 17–20.)

Petitioner points to portions of the trial transcript where Menjivar, on direct-examination, stated that he saw Petitioner "take out a knife[,]" "strike" the victim in the throat area, and heard Petitioner state "[t]his is what you get", but then changed his story on cross-examination stating "I thought, like, like, I don't know if he was stabbing him . . . I don't know if he had a knife. It was kind of dark." (ECF No. 13-6 at 116–17.) Petitioner also points to the testimony of Quintana, who stated on direct examination that Petitioner told his two friends who they had picked up while driving: "[Petitioner] had told what he had done to the victim. He told them that he had stabbed him." (*Id.* at 85.)

The Appellate Division, on direct appeal, denied this claim as follows:

> Next, defendant contends that the judge committed plain error by failing to *sua sponte* provide the jury with proper instructions regarding the statements he allegedly made to Menjivar and Quintana. While we agree the charge should have been given, we conclude the failure to do so was not plain error.
>
> "In the context of a jury charge, plain error requires demonstration of '[l]egal impropriety . . . prejudicially affecting the substantial rights of the defendant sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error

---

[1]     In Petitioner's brief on direct appeal, he cited to *State v. Hampton*, 294 A.2d 23 (N.J. 1972) and *State v. Kociolek*, 129 A.2d 417 (N.J. (1957), for the proposition that there is a general distrust of out-of-court statements. (*See* ECF No. 13-16 at 28–29.)

possessed a clear capacity to bring about an unjust result.'" *State v. Burns*, 192 N.J. 312, 341 (2007) (quoting *State v. Jordan*, 147 N.J. 409, 422 (1997)). The allegation of error must be assessed in light of "the totality of the entire charge, not in isolation." *State v. Chapland*, 187 N.J. 275, 289 (2006). While an erroneous jury charge may be a "'poor candidate[ ] for rehabilitation' under the plain error theory," *Jordan*, *supra*, 147 N.J. at 422–23 (quoting *State v. Simon*, 79 N.J. 191, 206 (1979)), we nonetheless consider the effect of any error in light "of the overall strength of the State's case." *Chapland*, *supra*, 187 N.J. at 289.

A trial court should provide a "*Hampton*" charge "whenever a defendant's oral or written statements, admissions, or confessions are introduced in evidence" regardless of "[w]hether [the charge is] requested or not." *Jordan*, *supra*, 147 N.J. at 425 (referencing *State v. Hampton*, 61 N.J. 250, 272 (1972)). A jury "shall be instructed that they should decide whether . . . the defendant's [statement] is true," and if they conclude that it is "not true, then they must ... disregard it for purposes of discharging their function as fact finders." *Hampton*, *supra*, 61 N.J. at 272; *see also* N.J.R.E. 104(c) ("If the judge admits the statement the jury shall not be informed of the finding that the statement is admissible but shall be instructed to disregard the statement if it finds that it is not credible.").

When a witness at trial testifies regarding oral statements made by a defendant, our Supreme Court has held that the trial judge should provide the jury with an instruction that it "should receive, weigh and consider such evidence with caution, in view of the generally recognized risk of inaccuracy and error in communication and recollection of verbal utterances and misconstruction by the hearer." *State v. Kociolek*, 23 N.J. 400, 421 (1957) (internal quotation marks omitted). "[T]he *Kociolek* charge should be given whether requested or not." *Jordan*, *supra*, 147 N.J. at 428. "However, failure to give the charge is not reversible error per se." *Ibid.* "There may be a rare case where failure to give a *Kociolek* charge alone is sufficient to constitute reversible error. . . . Ultimately, whether the failure to give a *Kociolek* charge is capable of producing an unjust result will depend on the facts of each case." *Ibid.*

Here, the statements allegedly made by defendant to Menjivar and Quintana were undoubtedly important to the State's case. However, Menjivar's testimony that he saw defendant stab Sanders and that defendant displayed the knife later in the car was far more significant than any remark regarding the size of the knife. Importantly, defense counsel vigorously cross-examined both witnesses regarding the statements allegedly made by defendant,

clearly suggesting that the jury carefully examine their credibility. *See State v. Feaster*, 156 N.J. 1, 73 (1998) (finding no plain error in failing to give the charge where "[d]efense counsel explored at length the criminal records of certain witnesses, their attempts to curry favor with the State and their motivation to lie, and the reliability of their perception"). Additionally, the judge gave a comprehensive charge regarding "credibility" in general. *See ibid.* In short, we are confident that the jury understood the need to assess the credibility of the witnesses' testimony regarding defendant's alleged statements, and the failure to provide the instruction does not "'raise a reasonable doubt'" that the jury was led "'to a result it otherwise might not have reached.'" *State v. Barden*, 195 N.J. 375, 394 (2008) (quoting *State v. Macon*, 57 N.J. 325, 336 (1971)).

*Robinson*, 2011 WL 1543355 at *4–5.

Petitioner's claim in this context appears to rest on matters of state law. The Supreme Court has explained that "[i]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions". *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). "[T]he fact that [an] instruction was allegedly incorrect under state law is not a basis for habeas relief." *Id.* at 71–72. Nevertheless, to the extent the claim could be construed as resting on federal law as well, the habeas court must consider "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process [under the Fourteenth Amendment] . . . not merely whether the instruction is undesirable, erroneous, or even universally condemned." *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) (internal citations and quotations omitted). A habeas petitioner must establish that the instructional error "had [a] substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Where the challenge is a failure to give an instruction, as it is in this claim, a petitioner's burden is "especially heavy," because "[a]n omission, or an incomplete instruction is less likely to be prejudicial than a misstatement of the law*." Henderson v. Kibbe*, 431 U.S. 145, 155 (1977). Further, it is "well established" that instructions "may not be judged in artificial isolation," but

must be viewed in the context of the overall charge and the trial record. *Cupp v. Naughton*, 414 U.S. 141, 146 (1973).

The state court determination on this matter was not objectively unreasonable. First, before jury deliberation, the judge instructed the jurors regarding their responsibility to assess the credibility of each witness and act as the sole arbiters of fact. (ECF No. 13-8 at 65–67.) The judge also explained that the jury could consider inconsistent statements made by witnesses as evidence of whether those statements were true. (*Id.*) Similar instructions were given at the conclusion of the trial. Thus, the jury was well aware of their responsibility to assess the truthfulness of Petitioner's out-of-court statements. Further, as the state court notes, the record makes clear that there was substantial evidence of Petitioner's guilt, beyond Petitioner's out-of-court statements. Joseph Menjivar testified that he personally observed the stabbing, and saw Petitioner run away after committing the offense. (ECF No. 13-6 at 117.) Petitioner's conviction was based on credibility determinations by the jury, who credited the State's witnesses over the version of the events in Petitioner's own defense.[2] While it may have been helpful to instruct the jury further, without more, Petitioner has failed to show that the instructional error had an injurious effect on the jury verdict. *Brecht*, 507 U.S. at 637. According, Petitioner is not entitled to relief on this claim.

---

[2] In Petitioner's traverse, he gives a lengthy argument that his out-of-court statements were, in fact, involuntary confessions, and should be evaluated under the Fifth Amendment right against self-incrimination. (ECF No. 18-1 at 35–44.) Because there is nothing to indicate the out-of-court statements Petitioner references were the product of a custodial interrogation, the Court will reject Petitioner's argument. *See Rhode Island v. Innis*, 446 U.S. 291, 300 (1980); *see also United States v. Young*, 233 F. App'x 114, 115 (3d Cir. 2007) (highlighting that incriminating statements made "spontaneously and voluntarily" are not subject to Fifth Amendment guarantees.)

## C. Ground Three, Four & Seven: Ineffective Assistance of Counsel ("IAC"), Jury Instructions, Summation

In Ground Three, Petitioner raises the same claim as Ground Two, but in the context of ineffective assistance of counsel. Namely, that his counsel was ineffective in failing to request a jury instruction on assessing the truthfulness of Petitioner's out-of-court statements. (ECF No. 1-1 at 21.) In Ground Four, Petitioner argues that his trial counsel was ineffective for failing to file a preliminary motion to challenge Petitioner's out-of-court statements. He explains that his counsel should have filed a motion to conduct a preliminary hearing under New Jersey Rule of Evidence 104(c) to assess the admissibility of Petitioner's statements. (ECF No. 1-1 at 26–28.) In Ground Seven, Petitioner asserts that his trial counsel was ineffective for failing to object to many incorrect and inflammatory statements made by the prosecutor during summation. (ECF No. 1-1 at 36–39.)

The Appellate Division, on appeal from the denial of PCR, denied these claims together, stating:

> The PCR judge concluded that several IAC [ineffective assistance of counsel] claims were procedurally-barred, including the alleged inadequacy of evidence at trial, the trial judge's failure to instruct the jury regarding defendant's out-of-court statements, the read back of certain testimony, the prosecutor's summation comments and the excessiveness of defendant's sentence. The judge reasoned consideration of these issues was barred by *Rule* 3:22–5 because they were adjudicated on direct appeal.
>
> The effect of *Rule* 3:22–5 is that "PCR will be precluded *only if* the issue is identical or substantially equivalent to the issue already adjudicated on the merits." *State v. Afanador,* 151 N.J. 41, 51 (1997) (citations and quotation marks omitted). We agree with defendant that there is a qualitative difference between our consideration of an issue on direct appeal and the subsequent assertion of a related issue in the context of an IAC claim. *See, e.g., State v. Allen,* 398 N.J. Super. 247, 257 n.8 (App. Div. 2008) (explaining that issues "as framed on the direct appeal and as

presented now in the context of ineffective assistance of counsel are substantively different").

In any event, defendant's IAC claims relying on these points cannot succeed for another reason. As to each claim cited by the PCR judge, we considered the merits of defendant's arguments on direct appeal and concluded none of them required reversal. In other words, even if trial counsel's performance was deficient, defendant cannot satisfy the second prong of the *Strickland/Fritz* test because the legal arguments themselves, if raised at trial, would have been unsuccessful. *See, e.g., Echols, supra,* 199 N.J. at 361–62; *Worlock, supra,* 117 N.J. at 625.

*Robinson*, 2014 WL 8628578 at *3.

The Sixth Amendment guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984). A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied. *Id.* at 687. First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687–88. To meet this prong, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The court must then determine whether, in light of all the circumstances at the time, the identified errors fell "below an objective standard of reasonableness." *Hinton v. Alabama*, 134 S. Ct. 1081, 1088 (2014).

Second, a petitioner must establish that counsel's "deficient performance prejudiced the defense so as to deprive the defendant of a fair trial." *Strickland*, 466 U.S. at 669. To establish prejudice, the defendant must show that "there is a reasonable probability that the result of trial would have been different absent the deficient act or omission." *Id.* at 1083. On habeas review,

it is not enough that a federal judge would have found counsel ineffective. The judge must find that the state court's resolution of the issue was unreasonable. *Harrington v. Richter,* 562 U.S. 86, 101 (2011).

The Appellate Division's decision does not amount to an unreasonable application of the prejudice prong of *Strickland*. With respect to counsel's failure to request an instruction or file a preliminary motion related to Petitioner's out-of-court statements, it is not reasonably probable that the outcome of the case would have been different. An added instruction would have only reinforced the notion that the jurors are the sole arbiters of the facts and sole judges of the credibility of witness testimony. Indeed, the jury was given other instructions regarding credibility. Even if Petitioner's out-of-court statements would have been deemed inadmissible, as explained above, there was other evidence beyond those statements from which the jurors could have found Petitioner guilty of the charges. Thus, the state court's decision did not violate clearly established law.

Next, Petitioner has not shown to a reasonable probability that the outcome of the case would have been different had trial counsel objected to the prosecutor's statements on summation. In support of his claim, Petitioner points to various statements made by the prosecutor, which Petitioner argues were either false, pure speculation, or inflammatory. For example, on summation, the prosecutor stated that Quintana and Menjivar had both seen Petitioner "plunge a knife" into the victim's neck (ECF No. 13-8 at 41), when in fact Quintana never affirmatively testified to seeing a knife. At another point, the prosecutor described Menjivar as a "scared . . . 13 year old kid. . .[b]ut because he's scared doesn't mean he's a liar." (*Id*. at 35). Petitioner alleges this statement inappropriately vouched for Menjivar's credibility. At the end of his concluding remarks, the prosecutor urged the jury to let Petitioner "answer for the choices he made" through

their verdict (*id.* at 46), which Petitioner alleges inflamed the jury. Petitioner argues that his counsel was ineffective in failing to object to these statements made on summation.

The Supreme Court has explained that a prosecutor's arguments on summation will only result in a constitutional violation if "the argument rendered the trial unfair." *Darden v. Wainwright*, 477 U.S. 168, 179 (1986). "[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned. . .[t]he relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* at 181 (internal citations and quotation omitted).

First, had counsel objected to the alleged inflammatory statements and the judge deemed the statements improper, there was still ample evidence of Petitioner's guilt, as mentioned earlier in this Opinion. Second, the jury instruction at the conclusion of trial instructed the jury not to consider the State and defense counsel's summation as evidence. (ECF No. 13-8 at 65). The jury is presumed to have followed this instruction. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000). Petitioner fails to show he is entitled to relief on these claims.[3]

### D. Ground Five: IAC, Failure to Challenge the Indictment

In Ground Five, Petitioner argues that his trial counsel was ineffective for failing to challenge the indictment. (ECF No. 1-1 at 30.) In support of this claim, Petitioner asserts that no eyewitnesses testified during the grand jury proceedings, and that the sole witness who did testify, Detective Brownlie, made inaccurate statements replete with hearsay testimony. (*Id.* at 30–32.) Respondents argue this claim is not exhausted. However, even if the claim is unexhausted, for the

---

[3]     In total, Petitioner points to eleven statements made by the State on summation, which he argues were improper. While the Court only cited to a number of them, the Court has reviewed them all. For the reasons explained above, the Court finds that Petitioner is not entitled to relief on these claims.

reasons that follow, the Court finds the claim meritless. *See Taylor*, 504 F.3d at 427 (permitting a court to deny a claim on the merits, irrespective of whether the claim is properly exhausted).

At the outset, because the grand jury record has not been provided by the parties, the Court is unable to determine if there were errors in the grand jury proceeding in the manner Petitioner describes. Nevertheless, on the merits, deficiencies in state grand jury proceedings are generally not grounds for relief in § 2254 habeas proceedings. *See, e.g.*, *Lopez v. Riley,* 865 F.2d 30, 32 (2d Cir. 1989) (relying on *United States v. Mechanik,* 475 U.S. 66 (1986)). While this is not always the case, *see Lafler v. Cooper,* 566 U.S. 156, 165 (2012) (explaining that it is not "a rigid rule that an otherwise fair trial remedies errors not occurring at the trial itself . . . . instead [court's must inquire] whether the trial cured the particular error at issue"), here, the Court finds that the trial testimony cured the types of errors asserted by Petitioner during the grand jury proceeding. Indeed, Petitioner was not prejudiced by his counsel's failure to object to the alleged hearsay testimony. The two witnesses, Jonathan Cancel and Oscar Quintana, about which Detective Brownlie allegedly gave inaccurate statements, had the opportunity to testify and be cross-examined at trial. (*See* ECF Nos. 13-6 & 13-7.) Further, Detective Brownlie also had an opportunity to testify at trial. (ECF No. 13-7 at 30–34.) Thus, any errors related to witness testimony during the grand jury proceeding were cured at the subsequent trial which resulted in a guilty verdict. *See Mechanik*, *supra*, 475 U.S. at 70; *see also United States v. Console*, 13 F.3d 641, 672 (3d Cir. 1993) (with the exception of a claim of racial discrimination in the selection of grand jurors, a "petit jury's guilty verdict render[s] any prosecutorial misconduct before the indicting grand jury harmless.") (citing *Vasquez v. Hillery*, 474 U.S. 254 (1986)). Therefore, Petitioner, has not demonstrated that he was prejudiced by counsel's purported failures to object during the grand jury proceedings. Accordingly, this claim for habeas relief is denied.

### E. Ground Six: Prosecutorial Misconduct

Petitioner next argues that prosecutorial misconduct occurred when the prosecutor permitted Joseph Menjivar to give false testimony. Petitioner further asserts that the prosecutor acted inappropriately when he used that false testimony on summation. (ECF No. 1-1 at 32.) In support of this argument, Petitioner explains that the prosecutor was aware of Menjivar's prior inconsistent statements about the stabbing, but he failed to elicit the inconsistencies from Menjivar. (*Id.* at 32–35.) As noted above, the record indicates that on direct-examination, Menjivar affirmatively stated that he saw Petitioner stab the victim with a knife. However, Menjivar then changed his story on cross-examination stating that he was not sure if Petitioner had a knife. Based on these inconsistencies, Petitioner argues that the prosecutor knowingly elicited false testimony and used that false testimony to bolster his argument on summation.

The Appellate Division on direct appeal rejected Petitioner's prosecutorial misconduct claims together, explaining:

> Defendant's final two arguments regarding the trial lack sufficient merit to warrant extensive discussion. *R.* 2:11–3(e)(2). We add only the following. Defendant contends that the prosecutor committed reversible error during his summation. "To justify reversal, the prosecutor's conduct must have been clearly and unmistakably improper, and must have substantially prejudiced [the] defendant's fundamental right to have a jury fairly evaluate the merits of his [or her] defense." *State v. Harris,* 181 N.J. 391, 495 (2004) (alteration in original) (internal quotation marks omitted), *cert. denied sub nom., Harris v. New Jersey,* 545 U.S. 1145, 125 S. Ct. 2973, 162 L. Ed. 2d 898 (2005). There was no objection at the time so we review the claim under the plain error standard. *R.* 2:10–2. Our review of the specific comments that defendant claims warrant reversal reveals they were not improper.

*Robinson*, 2011 WL 1543355 at *6.

With respect to a prosecutor eliciting false testimony, the Supreme Court has explained that "the Fourteenth Amendment cannot tolerate a state criminal conviction obtained by the

knowing use of false evidence." *Miller v. Pate*, 386 U.S. 1, 7 (1967); *see also Napue v. Illinois*, 360 U.S. 264 (1959). The knowing use of perjured testimony "involves prosecutorial misconduct and, more importantly, involves 'a corruption of the truth-seeking function of the trial process.'" *United States v. Bagley*, 473 U.S. 667, 680 (1985) (quoting *United States v. Agurs*, 427 U.S. 97, 104 (1976)). However, a conviction obtained by the knowing use of perjured testimony must be set aside only if there is a reasonable probability that, absent the perjured testimony, the outcome of the trial would have been different. *Bagley*, 473 U.S. at 680 n.9. Accordingly, to make out a due process violation, one must show that a witness committed perjury; the government knew or should have known of his perjury; the perjured testimony went uncorrected; and there is a reasonable likelihood that the false testimony affected the verdict. *See Lambert v. Blackwell*, 387 F.3d 210, 242–43 (3d Cir. 2004).

A review of the prosecutor's examination of Menjivar indicates that the state court's decision rejecting this claim did not violate clearly established federal law. There is nothing in the record to indicate that the prosecutor engaged in the knowing use of false testimony. The prosecutor asked Menjivar clear and concise questions about what he witnessed, and Menjivar testified unambiguously that he observed the stabbing. (ECF No. 13-6 at 116–17.) It was only on cross-examination that defense counsel elicited inconsistent testimony between statements Menjivar made to the police department and his testimony in court. (ECF No. 13-7 at 11–22.) However, while there were various discrepancies and omissions in the police report—such as the sequence of events and the number of stabbings Menjivar observed—Menjivar was consistent in his testimony that he witnessed the stabbing. *See United States v. Wolny*, 133 F.3d 758, 763 (10th Cir. 1998) (explaining that "[c]ontradictions and changes in a witness's testimony alone do not constitute perjury and do not create an inference, let alone prove, that the prosecution knowingly

presented perjured testimony") (citation and internal quotation marks omitted). On cross-examination, Menjivar explained that he was thirteen years old at the time he gave his statement to the police, he was frightened and some of his statements may not have been accurate. (ECF No. 13-7 at 18–20.) To the extent there was any inconsistent testimony, the Court is satisfied that there is no evidence showing that this was the result of any prosecutorial misconduct, and not merely the result of rigorous cross-examination. Therefore, the Court finds that Petitioner has failed to demonstrate that he is entitled to relief on this claim.

With respect to the prosecutor's summation, a prosecutor's arguments on summation will rise to the level of a constitutional violation only if they render the trial unfair. *See Darden*, 477 U.S. at 179. Combing through the record, there simply is nothing to indicate that the arguments rendered the trial unfair. As discussed *supra* in Ground Two, the judge's jury instruction reminded the jury that they are the exclusive judges of the evidence, and that any statements made by the State or defense counsel does not constitute evidence. (ECF No. 13-8 at 65–66.) *See Weeks*, 528 U.S. at 234 (explaining that a jury is presumed to follow instructions). While defense counsel vigorously cross-examined Menjivar, eliciting significant inconsistent testimony between statements he made to the police department and his testimony in court, (ECF No. 13-7 at 11–22), the jury was free to accept the prosecutor's version of the case, or reject it, based on the testimony at trial. For these reasons, Petitioner has failed to show he is entitled to relief on this claim.

### F. Ground Eight & Nine: Readback Testimony

In Ground Eight, Petitioner argues that he was prejudiced by the readback testimony presented to the jury. (ECF No. 1-1 at 40–45.) At trial, the jury sent a note during deliberations that requested testimony from Quintana and Menjivar related to the fight between Petitioner and the victim, as well as Menjivar's recollection of Petitioner pulling out the knife. (ECF No. 13-9 at

8.)  Petitioner asserts that the excerpts chosen to be read back prejudiced him because the jury was not read the testimony from Quintana where he stated that he never saw a knife.  In Ground Nine, Petitioner asserts counsel was ineffective for failing to object to the readback.

On direct appeal, the Appellate Division denied Ground Eight as follows:

> Defendant's next argument concerns the read back of certain testimony.  After retiring to deliberate, the jury sent out a note asking to hear some of Quintana's and Menjivar's testimony.  The following colloquy took place:
>
>> Judge: Okay.  We're back on the record, and counsel and the [c]ourt [r]eporter have had the opportunity to discuss the transcript and the questions that were posed by the jury.  And I gather from comments I'm hearing that both counsel have had the opportunity to review what was prepared by the [c]ourt [r]eporter and everybody's agreeable.
>>
>> Defense counsel: That's correct, your Honor.  During the luncheon hour and thereafter, counsel and I jointly met with the [c]ourt [r]eporter using draft transcripts.  We've gone over it.  We've reached agreement as to all the—what we believe to be all the relevant sections that the jury is asking for.
>
> The Court reporter then read the agreed upon testimony.
>
> Defendant contends "[t]he readback ... did not give a full view of the issues in question."  However, "[a] 'defendant cannot beseech and request the trial court to take a certain course of action, and upon adoption by the court, take his chance on the outcome of the trial, and if unfavorable, then condemn the very procedure he sought and urged, claiming it to be error and prejudicial.'" *State v. Jenkins,* 178 N.J. 347, 358 (2004) (quoting *State v. Pontery,* 19 N.J. 457, 471 (1955)).  There was no error in this regard.

*Robinson*, 2011 WL 1543355 at *5.

This claim appears to present matters of state law that are not proper for this Court to grant habeas relief.  *See Estelle*, 502 U.S. at 67–68.  Further, Petitioner has cited no Supreme Court precedent, and this Court has not located any, addressing a criminal defendant's constitutional

right to the scope of readback presented to a jury. *See Beltran v. Hastings*, No. 12-2042, 2014 WL 1665727, at *23 (D.N.J. Apr. 24, 2014) (finding no Supreme Court precedent "delineating the manner in which a trial court should respond to a jury's request to have certain testimony read or played back for them."); *see also Hilson v. Junious*, No. 1-0072-MWF, 2013 WL 5574989, at *17 (C.D. Cal. Oct. 8, 2013) (finding no Supreme Court precedent that "squarely addresses whether a criminal defendant has a constitutional right to have testimony read back to the jury.")  In the absence of Supreme Court precedent on this matter, the Court cannot conclude that the state court decision was contrary to or an unreasonable application of Supreme Court precedent.

Finally, to the extent the claim could possibly be construed as containing a federal claim, the trial court's error, if any, is harmless.  Where a trial error has occurred, it is generally subject to harmless error analysis.  *See Smith v. Horn*, 120 F.3d 400, 416–17 (3d Cir. 1997).  Under the harmless error standard, a petitioner will not be entitled to habeas relief unless s/he has demonstrated "'actual prejudice,' in the form of a substantial and injurious effect or influence in determining the jury's verdict." *Eley*, 712 F.3d at 847 (citing *Brecht*, 507 U.S. at 637).

Petitioner has not shown actual prejudice from the readback testimony.  First, the jury had previously heard the testimony from Quintana that he did not observe a knife.  (ECF No. 13-6 at 91–92.)  During summation, defense counsel also repeated that fact.  (ECF No. 13-8 at 22.)  Thus, the jury was certainly aware of Quintana's testimony.  Further, the jury note only requested Quintana's testimony related to the fight he observed, not his testimony related to never seeing a knife.  (ECF No. 13-9 at 8.)  Because the readback did not result in actual prejudice, Petitioner has failed to show he is entitled to relief on this claim.

The Appellate Division denied Ground Nine during the PCR proceedings as follows:

> On direct appeal, we concluded that trial counsel had consented to those portions of the evidence to be read back in response to a jury

question, so any claim of error was invited and barred from review on appeal. *Robinson*, *supra*, slip op. at 13. We have carefully reviewed those portions of the trial transcript that defendant now claims should have been included in the read back. These alleged omissions added nothing significant to the testimony actually read back, or else were not responsive to the jury's question.

*Robinson*, 2014 WL 8628578 at *3.

The state court previously cited to the ineffective assistance standard laid out in *Strickland*. Petitioner fails to show that had trial counsel requested all of Quintana's testimony to be readback, the judge would have agreed. This is because the jury note only requested testimony from Quintana related to the fight. Thus, counsel's failure to make this request caused Petitioner no prejudice under *Strickland*. Additionally, the jury already had an opportunity to hear Quintana testify directly to not seeing a knife and it was repeated by defense counsel on summation. Thus, the failure of counsel to object to the readback testimony did not prejudice Petitioner under *Strickland*. Accordingly, the state court's decision was neither contrary to nor an unreasonable application of *Strickland*. The claim is denied.

### G. Ground Ten & Eleven: Failure to Strike Jurors, IAC

In Ground Ten, Petitioner asserts that the judge erred in failing to strike five jurors for cause. (ECF No. 1-1 at 46.) In Ground Eleven, Petitioner argues his counsel was ineffective for failing to dismiss these same jurors using his remaining peremptory challenges. (*Id.* at 48–51.)

On direct appeal, the Appellate Division rejected Ground Ten as follows:

Defendant contends that the judge abused his discretion by failing to sua sponte excuse five jurors for cause. The State argues that the judge did not abuse his discretion, and, since defendant failed to exercise all of his peremptory challenges, he is not entitled to a new trial based on this claim.

"*Voir dire* procedures and standards are traditionally within the broad discretionary powers vested in the trial court and its exercise of discretion will ordinarily not be disturbed on appeal." *State v.*

24

*Papasavvas,* 163 N.J. 565, 595 (2000) (quotations omitted). This is so because "[d]ecisions concerning the potential bias of prospective jurors are primarily subjective in nature." *State v. Singletary,* 80 N.J. 55, 63 (1979). In particular, "rulings on . . . challenges for cause . . . are highly discretionary." *State v. Biegenwald,* 106 N.J. 13, 37 (1987). Additionally, "[a] criminal defendant is not entitled to a new trial when he is forced to exercise a peremptory challenge to excuse a juror who should have been excused for cause if all peremptories have not been exercised." *State v. Wilson,* 266 N.J. Super. 681, 685 (App. Div. 1993) (citing *State v. Bey,* 112 N.J. 123, 154 (1988)).

In this case, defendant exercised only four of the twenty peremptory challenges available. Moreover, the judge did not abuse his discretion in failing to sua sponte excuse the five jurors for cause. All five of the now-challenged jurors indicated that they would be impartial and fair. "[A] juror's declaration of impartiality will be accorded great weight and a judge's assessment of a juror's credibility in responding to questions will be respected." *State v. Carroll,* 256 N.J. Super. 575, 599 (App. Div.) (citing *Singletary, supra,* 80 N.J at 62–63), *certif. denied,* 130 N.J. 18 (1992). There was no error in this regard.

*Robinson*, 2011 WL 1543355 at *5–6.

The Sixth Amendment guarantees a criminal defendant the right to a "fair trial by a panel of impartial, indifferent jurors." *Irvin v. Dowd,* 366 U.S. 717, 722 (1961) (internal quotation marks omitted). That right is extended to state criminal trials through the Due Process Clause of the Fourteenth Amendment. *See Duncan v. Louisiana,* 391 U.S. 145, 148–149 (1968). "An impartial jury consists of nothing more than jurors who will conscientiously apply the law and find the facts." *Lockhart v. McCree*, 476 U.S. 162, 163 (1986); *see also United States v. Tindal*, 357 F. App'x 436, 438 (3d Cir. 2009) (explaining that "[j]urors are presumed to be impartial"). *Voir dire* "is conducted under the supervision of the court, and a great deal must, of necessity, be left to its sound discretion." *Connors v. United States*, 158 U.S. 408, 413 (1895). "This is so because the determination of impartiality, in which demeanor plays such an important part, is particularly

within the province of the trial judge." *Ristaino v. Ross*, 424 U.S. 589, 594–95 (1976) (internal quotations and citation omitted).

Having reviewed the jury selection record, the Court finds Petitioner is not entitled to relief on Ground Ten. Juror #1 indicated that his friend had died in an arson fire, but that the incident would not impair his ability to be fair. (ECF No. 13-4 at 15.) Juror #2 stated her brother-in-law worked for the prosecutor's office, dealing with electronics and public relations, but indicated that would not bias her and that she could be entirely impartial. (*Id.* at 65–66.) Juror # 7 stated she had an acquaintance who was shot, but also stated that would not affect her ability to be fair and impartial. (*Id.* at 36.) Juror #8 stated that she would hope police officers are honest, but then affirmed that she understood some police officers are honest and some are not. (*Id.* 76–77.) Finally, Juror # 10 indicated that she might be disturbed by certain murder cases, but then affirmed that she could be impartial and listen to the evidence while keeping an open mind. (*Id.* at 55.) There is nothing to indicate that the state court erred in failing to s*ue sponte* dismiss these jurors. The particular jurors all affirmed that they could be impartial. *See Irvin*, 366 U.S. at 722. Nothing indicates otherwise. Accordingly, Petitioner is not entitled to relief on Ground Ten.

The Appellate Division on PCR denied Ground Eleven as follows:

> [Defendant] argues counsel had sixteen remaining peremptory challenges and should have excused the jurors.
>
> Certainly, to meet the first prong of the *Strickland/Fritz* test, defendant bears the burden of proving trial counsel's performance, i.e., not using peremptory challenges to excuse the five jurors, was constitutionally deficient and not a sound strategic decision. *State v. Castagna,* 187 N.J. 293, 314 (2006). "As a general rule, strategic miscalculations or trial mistakes are insufficient to warrant reversal except in those rare instances where they are of such magnitude as to thwart the fundamental guarantee of [a] fair trial." *Id.* at 314–15 (alteration in original) (internal quotation marks and citation omitted).

> Little else during the course of a trial is more subtle or imprecise than the exercise of challenges during the selection of a jury. It is near impossible to second-guess an attorney's decision not to exercise a challenge, absent a juror's clearly disqualifying trait. In this case, as we noted on direct appeal, all of the disputed jurors "indicated they would be impartial and fair." *Robinson, supra,* slip op. at 15. Defendant did not present a prima facie case of IAC on this issue.

*Robinson*, 2014 WL 8628578 at *4–5.

The state court did not unreasonably apply the first prong of *Strickland* in rejecting this claim. As noted above, there is nothing from the record to indicate the five jurors could not be fair or impartial. Each juror was questioned by the judge, and explicitly stated they could be fair, despite certain personal views. Thus, there is no basis to find that counsel's decision not to exclude the five jurors fell below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 687–88. Because Petitioner has failed to show that the state court decision was unreasonable, Petitioner is denied habeas relief on these claims.

**H. Ground Twelve: Jury Selection Process**

Petitioner next asserts that trial counsel was ineffective in failing to allow him to be present and participate at *voir dire* sidebar. (ECF No. 1-1 at 52.) In support of this claim Petitioner explains that after the attorneys met at sidebar to discuss juror #2, Petitioner requested to participate at sidebar, but counsel disagreed. (*Id*. at 53.)

The Appellate Division in affirming the denial of PCR rejected this claim as follows:

> [T]here is nothing to support defendant's assertion [that he did ask to participate in *voir dire* sidebars] except for his self-serving certification, which lacks any detail as to when and how this request was made and is uncorroborated by anything else in the record. In short, it is nothing but a quintessential bald assertion of deficient advice. [*State v. Cummings*, 321 N.J. Super. 154, 170 (App. Div.) (1999)].

*Robinson*, 2014 WL 8628578 at *4.

There is nothing in the trial transcript to indicate that Petitioner affirmatively expressed a desire to participate in *voir dire* sidebar. *See State v. W.A.*, 875 A.2d 882, 894 (N.J. 2005) (explaining that under New Jersey law, "a defendant who does not affirmatively request the right to participate in *voir dire* sidebars should be considered to have waived the right"). However, even assuming that Petitioner did in fact request to be present at sidebar, his claim in this context still fails to warrant granting habeas relief. Petitioner has not shown that had counsel included Petitioner at sidebar, there is a reasonable probability the outcome of the trial would have been different. Petitioner points only to juror #2, stating that had he heard her *voir dire* at sidebar, he would have requested from his attorney that she be excused. As noted earlier, however, the juror indicated she could be impartial. Considering the extent to which the evidence weighed against Petitioner, there is nothing to indicate that even had this juror been excused, Petitioner would have fared better with a different juror. *See United States v. Lathrop*, 634 F.3d 931, 937–38 (7th Cir. 2011) (recognizing decisions to accept or strike potential jurors as strategic choices entitled to deference under *Strickland*). Therefore, Petitioner has failed to demonstrate he is entitled to relief on this claim.

## I. Ground Thirteen: Jury Charges

In Ground Thirteen, Petitioner argues that counsel was ineffective in requesting that the sequence of charges on the verdict sheet first require the jury to consider murder before considering passion/provocation manslaughter. In addition, Petitioner argues that the judge shifted the burden of proof to him when instructing the jury on passion provocation manslaughter. Furthermore, he asserts that his counsel erred in failing to request that self-defense be contained in the verdict sheet. (*Id.* at 55–57.)

The Appellate Division found the claims procedurally barred and lacking merit, stating only: "[w]e agree with the PCR judge . . . we have carefully read the trial transcript regarding the jury charge and reviewed the verdict sheet. Defendant's claims of error lack any merit. R. 2:11–3(e)(2)." *Robinson*, 2014 WL 8628578 at *4.

Petitioner fails to show that he was prejudiced by counsel's failure to object to the passion/provocation instruction. Contrary to Petitioner's assertion, the instructions did not relieve the State of its burden to prove the elements of the offense beyond a reasonable doubt. Indeed, as illustrated below, the trial court reiterated throughout the jury charge that the burden of proof is always with the State:

> A person is guilty of murder if he, number 1, causes the victim's death or causes serious bodily injury that then results in the victim's death; and, number 2, that the defendant did so purposely or knowingly; and, number 3, that he did not act in the heat of passion resulting from a reasonable provocation.

> If you find beyond a reasonable doubt that the defendant purposely or knowingly caused Keenan Sanders' death or serious bodily injury that then resulted in his death, and that he did not act in the heat of passion resulting from reasonable provocation the defendant would be guilty of murder. If, however, you find that the defendant purposely or knowingly caused death or serious bodily injury that then resulted in death, and that he acted in the heat of passion resulting from reasonable provocation, the defendant would be guilty of passion/provocation manslaughter.

> In order for you to find the defendant guilty of murder, the State's required to prove each of the following elements beyond a reasonable doubt: Element number 1) that the defendant caused Keenan Sanders' death or serious bodily injury that then resulted in his death; and 2) that the defendant did so purposely or knowingly; and 3) that the defendant did not act in the heat of passion resulting from reasonable provocation.

> . . .

> The third element the State must prove beyond a reasonable doubt in order to find the defendant guilty of murder is that the defendant

did not act in the heat of passion resulting from reasonable provocation. Passion/provocation manslaughter is a death caused purposely or knowingly, that is committed in the heat of passion resulting from reasonable provocation. Passion/provocation manslaughter has four factors which distinguish it from murder. In order for you to find the defendant guilty of murder, the State need only prove the absence of any one of these factors beyond a reasonable doubt. The four factors are there was adequate provocation; 2) that the provocation actually impassioned the defendant; 3) that the defendant did not have reasonable time to cool off between the provocation and the act that caused the death; and 4) that the defendant did not actually cool off before committing the act which caused death.

(ECF No. 13-8 at 48–51.)

There is nothing in the jury charge or otherwise to indicate that the burden of proof shifted to Petitioner. The state court's decision denying this claim was not an unreasonable application of *Strickland*.

Petitioner also alleges that the sequential nature of the charge—that the jury could only consider lesser included offenses if they *first* determined that the State had not met its burden to prove charges in the indictment—was in error, and his counsel erred in failing to object to that instruction. The trial judge instructed the jury as follows:

With regard to the charge of aggravated manslaughter -- now these are lesser included charges. With regard to giving instruction on these lesser included charges, the law requires the Court to give those instructions, including the lesser charges, even if they are not contained in the indictment, and just because the Court is giving these instructions concerning these offenses does not mean the Court has any opinion one way or the other whether the defendant committed these or any other offense. Consider these offenses along with the offenses of which the defendant is indicted. *However, you are not to render a verdict on these lesser included charges or answer these questions on the verdict sheet unless you first find the State has failed to meet its burden with regard to the charge on the indictment.*

(*Id.* at 53) (emphasis added.)

The New Jersey Model Criminal Jury Charge on Lesser Included Offenses is nearly identical to the instructions given at Petitioner's trial. They do in fact require that a jury consider the charges in an indictment before considering lesser included offenses. Indeed, they read: "However, you are not to render a verdict on these offenses or answer the questions on the verdict sheet unless you find that the State has failed to meet its burden with regard to the offense(s) in the indictment." *See* Model Jury Charges (Criminal), Lesser Included Offenses (February 25, 2002). While the model charge does not include the word "first", Petitioner has failed to demonstrate how his trial counsel was deficient under *Strickland* in failing to object to the added word.

With respect to the verdict sheet, Petitioner argues it should have had the jury consider passion/provocation manslaughter before murder. During the jury charge conference, defense counsel questioned the order of offenses on the verdict sheet. Thus, this was an issue that was considered at trial. The judge, prosecutor and defense counsel all agreed that placing passion/provocation manslaughter before murder would confuse the jury. (*Id.* at 7–8.) Thus, Petitioner fails to show that the state court's denial of this claim was an unreasonable application of *Strickland*. Indeed, the verdict sheet is clear and places no greater emphasis on any one offense over any other. (*See* ECF No. 13-16 at 47–48.) Accordingly, Petitioner has failed to demonstrate that he was prejudiced by his counsel's alleged failure to object to the order of offenses on the verdict sheet. Further, in light of the jury instruction as a whole, and the overwhelming evidence against Petitioner, Petitioner has failed to show he is entitled to relief on this claim.

Finally, regarding including self-defense on the verdict sheet, New Jersey state law does not require that a verdict sheet include self-defense. *See State v. Branch*, 693 A.2d 1272, 1284 (N.J. Super. Ct. App. Div. 1997) (finding "no reason to conclude that the omission of self-defense

from the verdict sheet" was plain error since "[t]here is no verdict per se of self-defense"); *see also State v. Colon*, Indictment No. 99-06-2311, 2006 WL 1418003, at *2 (N.J. Super. Ct. App. Div. May 19, 2006) ("even if there was sufficient evidence to warrant submission of self defense to the jury, there is no requirement that this defense be presented in the form of a separate question on the verdict sheet."). The jury was more than adequately instructed on the theory of self-defense as well. (ECF No. 13-8 at 55–57.) Therefore, because the claim is meritless, the alleged failure of trial counsel to object to the verdict sheet fails under *Strickland*, as counsel's performance did not fall below an objective standard of reasonableness. Accordingly, petitioner is not entitled to federal habeas relief on Ground Thirteen.

### J. Ground Fourteen: Cumulative Errors by Trial Counsel

In Ground Fourteen, Petitioner argues that the cumulative errors of his trial counsel violated his Sixth Amendment rights. (ECF No. 1-1 at 60–68.) Petitioner points to forty errors by his trial counsel, the majority of which have already been discussed, and rejected. To the extent this claim is exhausted, the Appellate Division, in affirming the denial of PCR, stated generally, "[t]he PCR judge concluded the balance of defendant's IAC claims lacked merit, and, to the extent they are reiterated on appeal, we agree. R. 2:11–3(e)(2)." *Robinson*, 2014 WL 8628578 at *5.

"Individual errors that do not entitle a petitioner to relief may do so when combined, if cumulatively the prejudice resulting from them undermined the fundamental fairness of his trial and denied him his constitutional right to due process." *Fahy v. Horn*, 516 F.3d 169, 205 (3d Cir. 2008) (citing *Albrecht v. Horn*, 471 F.3d 435, 468 (3d Cir.2006)). *See Locust v. Ricci*, No. 08-2713, 2011 WL 6413858, at *32 (D.N.J. Dec. 12, 2011) (applying this standard to "cumulative errors of trial counsel").

Here, Petitioner has failed to demonstrate that the cumulative errors by trial counsel rendered the trial fundamentally unfair. For the reasons described earlier in this Opinion, the evidence against Petitioner was substantial; there was at least one eyewitness to the stabbing and witness testimony that Petitioner declared he had stabbed the victim. Accordingly, this claim for habeas relief is denied.

### K. Ground Fifteen: Evidentiary Hearing

In his final ground for habeas relief, Petitioner argues that none of his IAC claims should have been procedurally barred by the state courts, and that he should be entitled to an evidentiary hearing on the IAC claims. (ECF No. 1-1 at 69–70.) To the extent the state court found Petitioner's claims procedurally barred, because this Court has addressed all his claims on the merits, this argument need not be addressed. Further, there is no federal right to an evidentiary hearing or other relief denied by a state PCR court. More specifically, infirmities in a state PCR proceeding do not raise constitutional questions in a federal habeas action. *See, e.g.*, *Hassine v. Zimmerman*, 160 F.3d 941, 954 (3d Cir.1998) ("what occurred in the petitioner's *collateral* proceeding does not enter into the habeas calculation.") (emphasis in original). Accordingly, Petitioner is not entitled to relief on this ground.

### V. CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. §2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003);

*see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because jurists of reason would not disagree with this Court's conclusion that Petitioner has failed to make a substantial showing of the denial of a constitutional right, Petitioner's habeas petition is inadequate to deserve encouragement to proceed further and a certificate of appealability is denied.

## VI.    CONCLUSION

For the reasons stated above, the Petition for habeas relief is DENIED and Petitioner is DENIED a certificate of appealability. An appropriate order follows.


Dated:  June 11, 2018                                          /s/ Freda L. Wolfson
                                                               Hon. Freda L. Wolfson
                                                               United States District Judge